```
              IN THE UNITED STATES DISTRICT COURT FOR
             THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                   *
LJT & ASSOCIATES, INC.,
                                   *
     Plaintiff,
                                   *
          v.                              CIVIL NO.: WDQ-09-2405
                                   *
RICHARD L. KOOCHAGIAN,
                                   *
     Defendant.
                                   *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

LJT & Associates, Inc. ("LJT") sued Richard L. Koochagian for breach of contract in the Circuit Court for Howard County, Maryland. Koochagian removed to this Court on the basis of diversity. Pending are LJT's motion to remand and Koochagian's motion to dismiss or transfer venue to the Eastern District of Virginia. For the following reasons, LJT's motion will be granted, and Koochagian's motion will be denied.

I. Background

LJT, an Alabama corporation headquartered in Maryland, is an engineering services provider. Compl. ¶ 2.[1] Koochagian, a citizen of Virginia, is a former LJT employee, who worked in the Columbia, Maryland and Herndon, Virginia offices from May 16,

---

[1] The complaint has been verified by LJT Vice President, Sandra Satterfield, and Koochagian does not dispute any of the facts material to these motions.

2002 to November 9, 2007. *Id*. ¶ 3, 7, 11. While he was employed, LJT issued stock to Koochagian. *Id*. ¶ 8. He currently owns 225,000 LJT shares. *Id*.

In June 2005, LJT and Koochagian entered into a "Stock Bonus Agreement" ("SBA"). *Id*. ¶ 9. The SBA gave LJT "the right, but not the obligation, to repurchase" from Koochagian his LJT shares "for their fair market value" if he was terminated for a reason other than cause. *Id*. ¶ 10 & Ex. A. Under the SBA, the fair market value of the shares is to be determined "in good faith by the Board of Directors of [LJT]," and "may, but need not, be based on recent sales of Common Stock, recent appraisals of Common Stock or of the Corporation, or the earnings or book value of the Corporation, and may include discounts for minority holdings." *Id*. The SBA also stated that "failure to perform the obligations provided by this Agreement will result in irreparable damage to the Corporation and that specific performance of [Koochagian's] obligations may be obtained by suit in equity." *Id*.

On November 9, 2007, LJT terminated Koochagian for a reason other than cause. *Id*. ¶ 11. LJT then attempted to repurchase Koochagian's shares for $101,000. *Id*. ¶¶ 12, 13. The price was based in part on the shares' book value, which had been calcu-

lated by LJT's Chief Financial Officer, Donald Hough.[2]  *Id*. ¶ 13. Koochagian refused to sell his shares at that price and demanded that LJT perform a valuation of the company in order to determine the shares' fair market value.  *Id*. ¶ 14.

In February 2008, LJT hired the Clawson Group, Inc., a business valuation and financial investigation firm based in Reston, Virginia, to perform the valuation.  Def.'s Opp. to Mot. to Remand, Ex. 7 at 9-10.  The Clawson Group determined that the fair market value of LJT stock was $0.322 per share as of February 15, 2008; thus, Koochagian's stock was worth $72,611. Compl. ¶ 17, 18.  The Clawson Group's Chief Financial Officer, Kace Clawson, has testified that (1) LJT provided all the information necessary to perform the valuation, (2) the Clawson Group performed the valuation in the same manner it performs hundreds of other valuations each year, and (3) he considers the valuation to be professional and reasonable.  Pl.'s Reply, Ex. 3 (Clawson Dep. 14:13, 177:1-22, Feb. 26, 2009).  On March 6, 2008, LJT notified Koochagian of the Clawson Group's valuation.  Compl. ¶ 18.  On March 7, 2008, LJT sent Koochagian a check for $72,611 as payment for his shares. *Id*. ¶ 19.  Koochagian again refused to

---

[2] Hough calculated a per share book value of $0.10.  The book value of Koochagian's 225,000 shares was thus $22,550.  LJT "artificially increased the amount it offered" to $101,000 to provide Koochagian the equivalent of a full year's salary. Def.'s Opp. to Mot. to Remand, Ex. 7 at 9.

sell.  *Id*. ¶ 20.

On September 30, 2008, Koochagian sued LJT in the Eastern District of Virginia for breach of contract and other claims. *Id*. ¶ 22.  He alleged that LJT had breached the SBA by failing to act in good faith when it determined the fair market value of its stock.  *Id.*; Def.'s Opp. to Mot. to Dismiss, Ex. 4.  During this litigation, Koochagian hired Neil H. Demchick of the consulting firm Invotex Group to review the Clawson Group's valuation report.  Def.'s Opp. to Mot. to Dismiss, Ex. 18.  Demchick prepared an expert report in which he opined that the Clawson report was based on flawed methodology and had undervalued LJT's stock.  *Id*.  Demchick concluded that if the proper methodology had been used, the price per share would have been $2.048 as of February 15, 2008; thus, Koochagian's 225,000 shares were worth $460,800.  *See* Def.'s Opp. to Mot. to Remand 7.

On March 27, 2009, Judge Brinkema of the Eastern District of Virginia granted summary judgment to LJT on Koochagian's breach of contract claim because Koochagian could not prove actual damages, as Virginia law requires.  Def.'s Opp. to Mot. to Dismiss, Ex. 10.  In its motion for summary judgment, LJT had requested that the court order Koochagian to sell his shares for $72,611.  *Id*., Exs. 7, 10, 12. The court did not, and later explained that its summary judgment for LJT was not an acceptance

of the Clawson Group's valuation of the stock. *Id.*, Ex. 12.

On July 24, 2009, LJT's Board of Directors resolved that the book value of LJT stock was $0.13 per share and that this price represented the stock's fair market value. Compl. ¶ 36.

On August 6, 2009, LJT sued Koochagian in the Circuit Court for Howard County for specific performance of the SBA provision giving LJT the right to repurchase Koochagian's shares for fair market value. Paper No. 2. The complaint alleges that the fair market value of one share is the book value determined by the Board of Directors ($0.13) or the value determined by the Clawson Group ($0.322). *Id.* On September 14, 2009, Koochagian removed to this Court on the basis of diversity. Paper No. 1. On September 21, 2009, Koochagian moved to dismiss or transfer the case to the Eastern District of Virginia. Paper No. 11. On September 23, 2009, LJT moved to remand to the Circuit Court for Howard County. Paper No. 12.

II. Analysis

    A.   LJT's Motion to Remand under 28 U.S.C. § 1447(c)

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending." To remove a case, the defendant must file a notice of removal in the district

5

court within 30 days after receiving the initial pleading. 28 U.S.C. § 1446(a)-(b) (2006). The removing party has the burden of proving subject matter jurisdiction. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). Because removal raises "significant federalism concerns," the removal statutes must be strictly construed, and all doubts must be resolved in favor of remanding the case to state court. *Id*.[3]

LJT contends that the Court lacks subject matter jurisdiction because the fair market value of the shares it seeks to recover is at most $72,611; thus the case does not meet the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332.[4] Koochagian's Notice of Removal alleges that the amount in controversy exceeds $75,000 because the fair market value of Koochagian's shares is "many times" the $72,611 that LJT has offered him. *Id*. Koochagian

---

[3] *See also McGinty v. Player*, 396 F. Supp. 2d 593, 597 (D. Md. 2005); 28 U.S.C. § 1447(c) (2006) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

[4] In his Notice of Removal, Koochagian alleged that the Court has diversity jurisdiction under 28 U.S.C. § 1332. Not. of Removal ¶ 5. Under § 1332, "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states." 28 U.S.C. § 1332 (2006). The Notice properly alleges diversity of citizenship: LJT is an Alabama corporation with its principal place of business in Maryland, and Koochagian is a citizen of Virginia. *Id*. ¶¶ 3, 4. LJT has not disputed these allegations.

cites Demchick's review of the Clawson Report for this assertion. Def.'s Opp. to Mot. to Remand 7.  The Notice also cites paragraphs 37 and 39 of LJT's complaint, which allege that Koochagian's "actions have damaged LJT's legitimate business interests" and that "as a result of [Koochagian's] material breach and continuing breach of the SBA, [LJT] has been injured irreparably and otherwise, as to be determined at trial."  *Id*. Koochagian contends that based on these allegation and LJT's Prayer for Relief that that the Court grant "such other and further relief as may be just and equitable," LJT may recover damages if it prevails in this case.  *Id*.  Koochagian argues that even if the fair market value of the shares is only $72,611, the amount in controversy is greater than $75,000 because of the potential for this additional recovery.  *See* Def.'s Opp. to Mot. to Remand 3.

"In determining whether an amount in controversy is sufficient to confer jurisdiction, courts apply one of two legal standards depending on whether damages are specified or unspecified in the complaint." *Momin v. Maggiemoo's Int'l, LLC*, 205 F. Supp. 2d 506, 509 (D. Md. 2002).  When a plaintiff claims damages less than $75,000, "removal is proper only if the defendant can prove to a 'legal certainty' that the plaintiff would . . . recover more than that if she prevailed." *Id*.  If the complaint does not specify damages, "a defendant need only

prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Id*. at 509-10.[5] The defendant must establish the amount in controversy with "competent proof." *Id*. at 510. (requiring "summary judgment-type evidence" to demonstrate required amount in controversy). Mere allegations in the notice of removal are insufficient. *Green v. Metal Sales Mfg. Corp*., 394 F. Supp. 2d 864, 866 (S.D. W. Va. 2005).

When a plaintiff seeks equitable relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). When the relief sought is specific performance, the amount in controversy is the value of the property involved. *See Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993).[6]

Koochagian asserts that LJT seeks specific performance and unspecified damages. Thus, he must show by a preponderance of the evidence that the value of the object of the litigation--*i.e.*, his LJT stock--and LJT's potential damages satisfy the

---

[5] In such cases, "[a] lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer." *Id*. at 510.

[6] *See also Lee Sch. Lofts, LLC v. Amtax Holdings 106, LLC*, No. 3:08cv427, 2008 U.S. Dist. LEXIS 87572, at *9 (E.D. Va. 2008).

8

amount in controversy requirement.

Koochagian asserts that notwithstanding the Clawson Group's valuation, the value of the stock is more than $75,000. Not. of Removal ¶ 5. He offers in support of this assertion: (1) Judge Brinkema's refusal to order him to sell his stock for $72,611 and (2) Demchick's expert opinion that the Clawson Group significantly undervalued the stock.

Judge Brinkema's summary judgment order does not establish that the value of the stock is greater than $75,000. In granting summary judgment for LJT, Judge Brinkema said nothing about the accuracy of the Clawson Group's valuation; nor did the court undertake a valuation of the stock. Judge Brinkema merely refused to order Koochagian to sell his shares and suggested that the parties engage a mutually agreeable valuation firm to determine the value of the stock.[7] Judge Brinkema's order is not evidence of the value of the stock.

Demchick's expert report asserts that if the Clawson Group had used proper valuation methods, it would have concluded that LJT stock was worth $2.048 per share. At that price, the value of Koochagian's 225,000 shares would exceed $75,000. LJT argues that Demchick's report is entitled to little weight because

---

[7] As Koochagian notes, LJT did not counterclaim for specific performance in the Eastern District of Virginia. LJT's request appeared only in the Conclusion to its Motion for Summary Judgment, which did not state the basis on which Judge Brinkema

9

Demchick did not perform an independent valuation of LJT; Demchick merely reviewed the Clawson Report. At best, Demchick's report is a competing valuation of LJT, and there is no basis in the record for giving it more weight in the jurisdictional analysis than the Clawson Report. Koochagian offers no other evidence of the stock's value. Thus, he has not shown by a preponderance of the evidence that the value of the shares exceeds $75,000.

Koochagian argues that if the value of shares is $72,611, this figure and the unspecified damages sought in the complaint meet the amount in controversy requirement. LJT counters that it does not seek damages; it only seeks specific performance of the SBA provision allowing it to repurchase Koochagian's shares. Koochagian cites paragraph 39 of the complaint, in which LJT alleges that "as a result of [Koochagian's] material breach of the SBA, [LJT] has been injured, irreparably and otherwise, as to be determined at trial." He argues that this is a claim for damages.

The Court has no way of determining whether damages are recoverable or the amount of possible damages. Koochagian merely asserts that "it would be difficult to conclude" that LJT only seeks less in damages than the amount necessary to establish jurisdiction. Def.'s Opp. to Mot. to Remand 3. The Court cannot

---

could have ordered Koochagian to sell his stock.

draw *any* conclusion about LJT's possible recovery because there is no evident basis for damages. The complaint alleges only breach of contract. The SBA does not provide for damages for breach,[8] and there is no evidence or allegation that LJT has been harmed by Koochagian's refusal to sell his stock. Koochagian has adduced no "competent proof" that LJT will recover damages if it prevails.

III. Conclusion

Because Koochagian has not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, LJT's motion to remand for lack of subject matter jurisdiction will be granted. Because the motion to remand will be granted, Koochagian's motion to dismiss or transfer venue will be denied as moot.

December 10, 2009                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge

---

[8] Clause 16 of the SBA is the only provision dealing with remedies for breach. It states that "[Koochagian's] failure to perform the obligations provided by this Agreement will result in irreparable damage to the Corporation and . . . specific performance of [Koochagian's] obligations may be obtained by suit in equity."